## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| IN THE MATTER OF THE SEARCH | : | No. 1:17-mj-804 |
| OF THE TWELVE ELECTRONIC | : | |
| DEVICES ASSOCIATED WITH | : | |
| DOUGLAS GLANCY, STORED AT | : | |
| THE OFFICES OF THE CHILD | : | |
| EXPLOITATION AND | : | |
| OBSCENITY SECTION OF THE | : | |
| DEPARTMENT OF JUSTICE | : | |

### MOTION AND SUPPORTING MEMORANDUM TO UNSEAL AFFIDAVIT IN SUPPORT OF SEARCH WARRANT AND RELATED DOCUMENTS

COMES NOW, the United States of America, by and through the United States Attorney for the District of Columbia, respectfully move for an order to unseal the previously sealed Affidavit in Support of a Search Warrant for twelve electronic devices associated with Douglas Glancy, stored at the offices of the Child Exploitation and Obscenity Section of the Department of Justice, the Applications for Search Warrant, the Search Warrant, the Return on the Search Warrant, this Motion and Supporting Memorandum, and any related documents. In support whereof, the Government states as follows:

### BACKGROUND

1. The United States government conducted an investigation into Welcome to Video, a darknet[1] child exploitation site. Agents acting in an undercover capacity, while in Washington, D.C., accessed the site, and confirmed that it allows users to purchase videos depicting minors engaged in sexually explicit conduct, in violation of 18 U.S.C. § 2252(a)(2) and (a)(4)(B).

---

[1] A darknet market is a commercial website that operates in a hidden portion of the Internet, called the dark web, which requires special software to access. Darknet markets—such as Silk Road, AlphaBay, and others—function primarily as black markets, selling or brokering transactions involving drugs, weapons, stolen credit card details, and other illicit goods.

2.      The investigation revealed that Douglas Glancy was a suspected customer of Welcome To Video. On or about October 25, 2017, Glancy committed suicide.

3.      On October 25, 2017, after Glancy's suicide, law enforcement obtained a search warrant for his residence. *See* 1:17-mj-781 (DAR) (Sealed).  On October 31, 2017, law enforcement obtained a second search warrant for Glancy's seized devices. *See* 1:17-mj-804 (DAR) (Sealed).[2]

4.      On October 16, 2019, the government unsealed an indictment charging the alleged administrator of the site and unsealed the related docket.

5.      On October 16, 2019, the government filed a forfeiture complaint against twenty four virtual currency accounts, including one owned by Glancy.

<u>UNSEALING IS APPROPRIATE</u>

6.      The government previously moved to seal the warrants related to the Glancy investigation. At that time the government averred that public disclosure of the affidavit:

a.  would compromise the integrity of the broader investigation;
b.  might have alerted individuals who were the subject of the broader investigation of its existence and extent of the investigation;
c.  might alert individuals of the particular methods being used by law enforcement to follow their illegal activities.
d.  could alert the subjects who might flee to evade arrest or destroy evidence to frustrate prosecution, as well as move their ill-gotten gains; and
e.  might compromise the prosecution and, conceivably, endanger the safety of agents involved in executing the warrant.

7.      Due to Glancy's suicide and the unsealing of the indictment in this matter, and related documents, these factors no longer apply.

---

[2] The government does not concede that either search warrant was needed.  As noted below, the decedent had no Fourth Amendment rights after his death.

8.    As stated in *Washington Post v. Robinson*, 935 F.2d 282, 288 (D.C. Cir. 1999), there is a presumption of access to Court proceedings. But, this can be overridden if "'(1) closure serves a compelling interest; (2) there is a substantial probability that, in the absence of closure, this compelling interest would be harmed; and (3) there are no alternatives to closure that would adequately protect the compelling interest.'" Id. at 290 (quoting <u>Oregonian Pub. Co. v. United States Dist. Court</u>, 920 F.2d 1462, 1466 (9th Cir. 1990)).

9.    While in other cases involving uncharged defendants, the analysis may well be different, in this matter, given the subject's death, the United States no longer has a compelling interest that can justify continued sealing.

10.    Moreover, deceased individuals have limited rights, as the definition of a "person" in is largely limited to living human being. *See Guyton v. Phillips*, 606 F.2d 248, 250 (9th Cir. 1979) ("To the contrary, relevant cases suggest that the definition of a 'person for purposes of protection of constitutional rights is limited only to a living human being."); *Whitehurst v. Wright*, 592 F.2d 834, 840 (5th Cir. 1979); *Infante v. Dignan*, 782 F. Supp. 2d 32, 35 (W.D.N.Y. 2011).

11.    Specifically, "fourth amendment rights, are personal to the individual and may not be vicariously asserted." *United States v. McDowell*, 918 F.2d 1004, 1007 (1st Cir. 1990) (collecting cases); *see also Lovette v. United States*, 230 F.2d 263 (5th Cir. 1956) (holding that the Fourth Amendment guarantee against unreasonable search and seizure is personal).   Being personal, Fourth Amendment rights, expire with the person to whom it is associated. *See Ravellette v. Smith*, 300 F.2d 854, 857 (7th Cir. 1962).

12.    As such, heirs cannot assert Fourth Amendment rights of the decedent. *See Love v. Bolinger*, 927 F. Supp. 1131, 1136 (S.D. Ind. 1996).

13.     Likewise, privacy rights under common law are personal and terminate upon death. *See Justice v. Belo Broad. Corp.*, 472 F. Supp. 145, 147 (N.D. Tex. 1979) (listing cases where privacy rights do not extend beyond the death of the individual). Similarly, such common law rights cannot be brought by next of kin. *See Bradley v. Cowles Magazines, Inc.*, 168 N.E.2d 64, 66 (Ill. App. Ct. 1960) (listing cases supporting its decision not to extend the right to privacy to a decedent's surviving relative); *see also* 62A AM. JUR. 2D Privacy § 13 (2005 & Supp. 2015).

14.     Because Glancy died prior to the searches in question, "he had no Fourth Amendment rights [] when the officers searched [his devices and his residence]." *United States v. $80,941.05 in U.S. Currency*, No. 05-2106, 2006 WL 1215194, at *4 (C.D. Ill. May 5, 2006).

**WHEREFORE**, the United States respectfully requests that this Court issue an Order directing that the Clerk of the Court unseal the Affidavit in Support of Search Warrant for the above-listed property, the Application for Search Warrant, the Search Warrant, the Return on the Search Warrant, and any related documents.

Respectfully submitted,

JESSIE K. LIU
UNITED STATES ATTORNEY

By:        /s/   *Zia M. Faruqui*
           ZIA M. FARUQUI, D.C. Bar No. 494990
           LINDSAY SUTTENBERG
           YOULI LEE
           Assistant United States Attorney
           555 Fourth Street, N.W., Room 4806
           Washington, D.C. 20530
           (202) 252-7117
           Zia.Faruqui@USDOJ.Gov

4